UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

ADAM OJAR,

                    Petitioner,                    MEMORANDUM
                                                  AND ORDER
                                                  07-CV-3674 (JG)

        -against-

GARY GREENE, Superintendent,
Great Meadow Correctional Facility,

                    Respondent.
-------------------------------------------------------------x
A P P E A R A N C E S :

        ADAM OJAR
                06A1894
                Great Meadow Correctional Facility
                11738 State Route 22
                Box 41
                Comstock, NY 12821
                Petitioner, *Pro Se*

        RICHARD A. BROWN
                Queens County District Attorney
                125-01 Queens Boulevard
                Kew Gardens, NY 11415
        By:    John M. Castellano
                Rona I. Kugler
                Attorney for Respondent

JOHN GLEESON, United States District Judge:

        Adam Ojar, currently incarcerated in Great Meadow Correctional Facility,

petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction in

New York State Supreme Court for assault in the first degree and criminal possession of a

weapon in the fourth degree.  Appearing *pro se*, Ojar claims that his conviction was obtained

without due process of law due to the trial court's refusal to instruct the jury on the defense of

justification; the court's refusal to allow him to cross-examine a witness about a knife that Ojar claimed was used in the incident or to examine the knife; the prosecutor's persistence in asking improper questions; and the prosecutor's suggestion that Ojar was affiliated with a gang. For the reasons stated below, the petition is denied.

BACKGROUND

A.     *Offense Conduct*

Ojar's conviction arises from an altercation occurring on the night of April 5, 2004 at a Papaya King restaurant in Queens. The government's evidence at trial established that earlier that day, Dominic Fanelli struck Michael Carty in the mouth. At approximately 11:00 PM that night, Fanelli and Carty, each backed by a number of friends, came to the Papaya King to discuss the incident. Ojar was friends with Carty's friend Nathaniel Lambert, and so he came to the Papaya King on Carty's behalf. Lambert and approximately eight others were also present in support of Carty, and three of Fanelli's friends were present backing Fanelli.

During the discussions, one of Carty's friends punched Fanelli in the face. Fanelli charged at the crowd, causing a melee in which most of Carty's friends fled the restaurant. Ojar and Lambert stayed inside the restaurant, as did Fanelli and his friend Omar Jaffery. The government's evidence established that Ojar walked towards Fanelli and stabbed him once in the abdomen with a knife, puncturing his intestines in two places and requiring emergency surgery.

B.     *Procedural History*

Ojar was arrested and was tried in the New York State Supreme Court, Queens County from February 23 to March 3, 2006. At trial, he testified that he did not intentionally stab Fanelli. Rather, Ojar claims, he saw a knife fall to the floor during the melee. Fanelli

reached for the knife.  Concerned that Fanelli or someone else might pick it up and use it, Ojar grabbed the knife with his left hand, and with his right hand picked up Lambert, who had fallen to the floor.  Fanelli, continuing his attempt to grab the knife, crashed into Ojar as Ojar was pulling Lambert up from the floor.  This collision caused the stab wound to Fanelli's stomach.

Ojar's defense counsel requested an instruction on justification, which the trial court refused to give due to the accidental nature of the stabbing as it was described by Ojar himself.  The trial court also refused to allow Ojar to elicit testimony regarding a knife that Fanelli's friend Jaffery was arrested with in connection with a different incident approximately a month later.  Ojar argued that he wished to argue that Jaffery's knife was the one he picked up at Papaya King, but the trial court considered the question of which knife Ojar used to be superfluous given Ojar's testimony that he picked up a knife on the ground.  Ojar asked for a mistrial, noting that the prosecution had argued that Ojar had brought the knife he stabbed Fanelli with.  The court denied Ojar's request for a mistrial.

The prosecutor also attempted to elicit at trial hearsay statements made to detectives identifying the defendant as having stabbed Fanelli.  This was met with repeated objections, which the trial court repeatedly sustained.  Additionally, immediately after having been told at sidebar not to inquire into Ojar's post-arrest silence while cross-examining him, the prosecutor attempted to inquire into his post-arrest silence and was met with immediate objection.  The trial court sustained the objection and issued curative instructions, but denied Ojar's motion for a mistrial.

Ojar was convicted at trial of assault in the first degree and criminal possession of a weapon in the fourth degree, but acquitted of attempted murder in the second degree and

assault in the second degree. He appealed his conviction, arguing that (1) he was entitled to an instruction on justification; (2) he was entitled to elicit further evidence about the knife Jaffery was later found with so that he could argue that it was the knife Ojar picked up at the Papaya King; (3) that the prosecutor's repeated attempts to elicit hearsay and attempt to inquire into the defendant's post-arrest silence constituted misconduct; and (4) that the verdict was legally insufficient and against the weight of the evidence. The Appellate Division rejected his arguments regarding justification and the evidentiary rulings regarding the knife on the merits, and rejected his arguments about prosecutorial misconduct and insufficiency of the verdict as unpreserved. *People v. Ojar* (*Ojar I*), 832 N.Y.S.2d 250, 251-52 (2d Dep't 2007). Ojar sought leave to appeal to the New York Court of Appeals, which was denied. *People v. Ojar* (*Ojar II*), 9 N.Y.3d 879 (2007) (Pigott, J.).

On August 23, 2007, Ojar filed this petition, arguing (1) that the trial court's refusal to instruct the jury on justification deprived him of due process of law by impairing his ability to present a complete defense; (2) that the trial court's refusal to allow him to elicit evidence regarding the knife Jaffery was later found with deprived him of due process of law by impairing his ability to present a complete defense; and (3) that the prosecutor's misconduct in persisting in asking about hearsay identifications and in asking about Ojar's post-arrest statements deprived him of due process of law by rendering the trial unfair. At oral argument, he also complained (4) that the prosecutor improperly suggested to the jury that he was a gang member. He does not renew his challenge to the verdict in this petition.

DISCUSSION

A.      *Standard of Review*

    1.      *Review of Procedurally Defaulted Claims*

       A state court's explicit reliance on a procedural bar preventing adjudication of the merits of a claim generally constitutes an independent and adequate state law ground for the state court's judgment precluding federal review. *See Harris v. Reed*, 489 U.S. 255, 260-62 (1989) (explaining rationale for habeas corpus procedural default rule); *see also Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (noting a state's interest in "channeling the resolution of claims to the most appropriate forum, in finality, and in having an opportunity to correct its own errors"). However, there are several circumstances in which a federal claim disposed of by a state procedural rule will still be reviewable on a federal petition for habeas corpus.

       First, a petitioner is entitled to review of a procedurally defaulted claim if he can show "cause for the default and actual prejudice as a result of the alleged violation of federal law." *Coleman*, 501 U.S. at 750. A petitioner may establish cause by showing "'that the factual basis for a claim was not reasonably available to counsel . . . or that some interference by officials . . . made compliance impracticable.'" *Id.* at 753 (internal quotation marks omitted) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To show prejudice, a petitioner must demonstrate that the alleged error worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003) (internal quotation marks omitted).

       Second, if a petitioner cannot show cause and prejudice, his procedural default may still be excused if he can demonstrate that a fundamental miscarriage of justice would result

5

from a failure to hear the claim on the merits -- that is, "that he is actually innocent of the crime for which he has been convicted." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (citing *Schlup v. Delo*, 513 U.S. 298, 321 (1995)). This ground for excusing procedural default should be applied only in "extraordinary" cases, as courts deem substantial claims of actual innocence "extremely rare." *Schlup*, 513 U.S. at 321-22.

Third, a procedural rule can fail to be a state ground "adequate" to protect a judgment from federal collateral attack in rare circumstances.[1] There is a "limited category" of "exceptional cases where exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna*, 534 U.S. 362, 376 (2002) (citation omitted). Whether or not a procedural rule is adequate to prevent a federal court from reaching the merits of a claim "is determined with reference to the 'particular application' of the rule; it is not enough that the rule 'generally serves a legitimate state interest.'" *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003) (quoting *Lee*, 534 U.S. at 387). The requirement of adequacy is intended to prevent state courts from avoiding "deciding federal issues by invoking procedural rules that they do not apply evenhandedly to all similar claims." *Id.* (quoting *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999)).

Accordingly, the question courts must ask to determine adequacy is "whether application of the procedural rule is 'firmly established and regularly followed' in the specific circumstances presented in the case, an inquiry that includes an evaluation of the asserted state interest in applying the procedural rule in such circumstances." *Cotto*, 331 F.3d at 240. In

---

[1]      The Supreme Court has tended not to characterize either cause and prejudice or a miscarriage of justice as affecting the adequacy of the procedural ground, though in a sense a procedural rule is not "adequate" to sustain a state court judgment when a habeas court looks past it due to cause and prejudice or a miscarriage of justice. *See generally Middleton v. Ercole*, No. 07-CV-2810 (JG) (VVP), 2007 WL 4264578, at *5 n.3 (E.D.N.Y. Dec. 3, 2007).

determining the adequacy of the application of a procedural rule, courts look to the following

"guideposts":

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

*Cotto*, 331 F.3d at 240; *see also Lee*, 534 U.S. at 381-83 (first articulating these factors).

      2.     *Review of State Court Adjudications on the Merits Under AEDPA*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") narrowed

the scope of federal habeas review of state convictions regarding claims the state court

adjudicated on the merits. 28 U.S.C. § 2254(d). A federal habeas court may now overturn a

state court's ruling on the merits of a claim only if the state decision was "contrary to, or an

unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States," or "was based on an unreasonable determination of the facts in light

of the evidence presented in the State court proceeding." *Id.*[2]

The Supreme Court has interpreted the phrase "clearly established Federal law, as

determined by the Supreme Court of the United States" to mean "the holdings, as opposed to the

dicta," of its decisions at the time of the state court decision. *Williams v. Taylor*, 529 U.S. 362,

412 (2000). A decision is "contrary to" clearly established federal law if "the state court arrives

at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the

---

[2]      This limited scope of review is often referred to as "AEDPA deference." *E.g.*, *Jimenez v. Walker*, 458 F.3d 130, 135 & n.2 (2d Cir. 2006).

state decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13.

A decision is "an unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* at 413. An unreasonable application is more incorrect than a merely erroneous one, *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (citing *Williams*, 529 U.S. at 411), but while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence," *Gilchrist*, 260 F.3d at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted)).

AEDPA's limited scope of review applies whenever a state court disposes of a state prisoner's federal claim on the merits and reduces its disposition to judgment, regardless of whether it refers to federal law in its decision. *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

B.      *Ojar's Claims*

1.      *Defense of Justification*

As the Appellate Division rejected Ojar's justification claim on the merits, *Ojar I*, 832 N.Y.S.2d at 251-52, AEDPA's limited scope of review applies. Accordingly, I cannot grant relief on this ground without determining (1) that Ojar was entitled to an instruction on justification under New York Law; (2) that the failure to give it constituted a denial of due process of law under the Fourteenth Amendment; and (3) that the Appellate Division's

conclusion to the contrary was an unreasonable application of clearly established Supreme Court law. *See Jackson v. Edwards*, 404 F.3d 612, 621 (2d Cir. 2005) (setting out three-part test for such claims).

A defendant is entitled to a jury instruction on justification under New York law "'if on any reasonable view of the evidence, the fact finder might have decided that the defendant's actions were justified.'" *Id.* at 622 (quoting *People v. Padgett*, 60 N.Y.2d 142, 145 (1983)). The Appellate Division found that Ojar's claim that he did not intend to stab Fanelli "undercut[]" his attempt to avail himself of the defense of justification. *Ojar I*, 832 N.Y.S.2d at 251. However, under New York law, defendants are entitled to a defense of justification if otherwise supported by the evidence even when they deny actually intending to use deadly force or actually causing the victim's death. *See, e.g.*, *People v. Jenkins*, 461 N.Y.S.2d 378, 379 (2d Dep't 1983) (finding justification instruction appropriate where the defendant claimed not to have stabbed the victim at all in a struggle over a knife, and concluding that "if the jury had been apprised of the justification defense, it might have concluded that defendant's actions were either completely justified or, at least, that they negated the intent element of the murder count"); *see also People v. Jeffries*, 561 N.Y.S.2d 86, 87 (2d Dep't 1990) ("It is not necessary, to support a justification charge, for the defendant to admit inflicting the fatal wound by his own hand, if the charge is otherwise supported by the facts." (citations omitted)); *Blazic v. Henderson*, 900 F.2d 534, 540 (2d Cir. 1990) ("[W]hen a defendant claims to have killed someone accidentally in the course of defending himself, the New York courts repeatedly have found reversible error in the failure to give a requested justification charge." (citing cases)). Therefore, although it may be puzzling to contemplate instructing the jury on justification for the use of deadly physical force

when the defendant does not admit to using deadly physical force at all, New York courts have held the instruction to be available as an alternative argument when the defendant claims that an accidental death ensued from a struggle over a weapon. Ojar's claimed inadvertence thus does not defeat his eligibility for this instruction.[3]

The Appellate Division also found that Ojar had failed to make out the elements of the defense of justification. The relevant provisions of New York law authorize the use of deadly physical force to the extent that the defendant reasonably believes it to be necessary to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful deadly physical force, so long as the defendant does not know that he can with complete safety to himself and others avoid the necessity of using deadly physical force by retreating. N.Y. Penal Law § 35.15.

The Appellate Division stated that the defendant did not "adduce any testimony demonstrating that the complainant was about to use deadly force against him," and "did not dispute that the complainant was unarmed." *Ojar I*, 832 N.Y.S.2d at 251. Viewing the record, as I must, in the light most favorable to the defendant, *see, e.g.*, *Padgett*, 60 N.Y.2d at 144 ("[I]n considering whether the court's charge to the jury was adequate, the record must be considered most favorably to defendant." (citations omitted)), I cannot agree with the Appellate Division's conclusion. Ojar testified that in the middle of a melee, he observed a knife fall to the floor, and saw Fanelli reach for the knife. Tr. 755-57. Viewed in a light favorable to him, this supports the inference that he reasonably believed that Fanelli, in seeking to grab a knife in the middle of a brawl, was about to use unlawful deadly physical force against either Ojar or a third person. And

---

[3]    Indeed, the respondent does not rely on or even mention this ground for sustaining the Appellate Division's decision.

while the respondent argues that Ojar's position near the door indicated that he could have retreated, his testimony that a hectic brawl involving at least one knife broke out in a "small area," Tr. 753, is sufficient, viewed in a light favorable to Ojar, to indicate that he did not know that he could, "with complete personal safety" to himself and others, avoid the necessity of using deadly physical force by retreating. N.Y. Penal Law § 35.15(2)(a).

The respondent has a stronger argument that any necessity for using deadly physical force dissipated by the time Ojar had the knife. It is true that the seizure of a weapon may dissipate the necessity of using deadly physical force. *See People v. Bennett*, 719 N.Y.S.2d 281, 282 (2d Dep't 2001) ("The defendant's statement to the police indicated that his wife threatened him with a knife, but that he was able to wrest it from her. At that point, the defendant's wife was no longer armed and, therefore, the defendant was no longer facing the imminent use of deadly physical force."); *cf. People v. Rodriguez*, 692 N.Y.S.2d 320, 321 (1st Dep't 1999) ("[E]ven if defendant's claim that the decedent reached for the gun that fell from defendant's waistband could be credited, defendant nevertheless conceded that he reached for the gun first, and that he shot the then unarmed individual eight times. There was no evidence from which it could be inferred that defendant still feared for his safety after picking up the gun, and no evidence that such a fear would have been reasonable."). However, where Ojar testified that Fanelli reached for the knife and then barreled into him in a close-quarters melee involving several others, the most favorable reading of the evidence suggests that Ojar may have reasonably feared that Fanelli sought to wrest the knife away from him and use it on him, and

may have reasonably believed the only way to prevent this was by using the knife on Fanelli. Therefore, Ojar was entitled to an instruction on justification regarding his assault charge.[4]

However, the failure to give this instruction did not prevent Ojar from presenting a complete defense in violation of the due process clause. The theory of justification is not the theory he presented; in fact, it contradicts his own account of the facts. Ojar argues that he did not intentionally use deadly physical force against Fanelli, not that he did so in a justified manner. Ojar's theory is that he did not have enough time to prevent Fanelli from running into his knife once he picked it up. This theory, however, was fully presented to and rejected by the jury, and has nothing to do with justification. The argument based on justification is that the jury was entitled to consider the possibility that Ojar intentionally used deadly physical force on Fanelli (even though Ojar claims that he did not) because he believed that Fanelli posed an imminent threat of deadly physical force toward himself or someone else. Therefore, in order to have convicted Ojar of assault, the jury already necessarily discredited his testimony to some extent. It is thus not likely that the jury would have credited the portions of his testimony that supported a defense of justification if they were instructed on that defense. *See Blazic*, 900 F.2d at 542-43 (finding that a failure to instruct the jury on justification in similar circumstances did not deprive the defendant of due process because in finding the defendant guilty, the jury had already discredited his testimony that the death was an accident); *see also Ellison v. Hoke*, No. 93-CV-3048 (FB), 1995 WL 561344, at *3-*4 (E.D.N.Y. Sept. 15, 1995) (similar).

---

[4]        To the extent that Ojar complains that he was entitled to a jury charge on justification with respect to his charge of criminal possession of a weapon, he is wrong. Justification is not a defense to criminal possession of a weapon. *People v. Thomas*, 649 N.Y.S.2d 454, 455 (2d Dep't 1996). His account of events would, if credited, have entitled him to acquittal on that charge as well, as an element of the crime he was charged with was intent to use the weapon unlawfully. N.Y. Penal Law § 265.01(2). As the jury was charged on the intent element of the crime, Tr. 1057, and convicted him nonetheless, it evidently did not credit Ojar's claim that he lacked intent.

Accordingly, I find that Ojar was not denied due process of law by the trial court's refusal to instruct the jury on justification. I therefore cannot say that the Appellate Division's similar conclusion was an unreasonable application of clearly established Supreme Court law.

2. *Testimony Regarding the Knife*

Ojar argues that the trial court erred in preventing him from eliciting testimony regarding the description of Jaffery's knife and from examining the knife. Jaffery, one of Fanelli's friends, testified that he brought the knife to the Papaya King and kept it in his sleeve, but did not take it out. Tr. 273, 286-87. He then chased Ojar's friend Carty with that knife on two occasions approximately one month later, Tr. 216-18, 269, 283-86, 489, for which he was subsequently arrested. Ojar sought to question an officer on cross-examination about the description of Jaffery's knife, which was confiscated at his arrest, so that he could establish that it matched the description of the knife Ojar claimed he found on the floor. Tr. 491-92. The trial judge denied this request, arguing that the ownership of the knife was irrelevant if Ojar found it on the floor, and suggesting that the inquiry prejudiced the government by drawing attention to Jaffery's later misbehavior in chasing Carty. Tr. 492-93.

While the Constitution protects the right of a criminal defendant to "a meaningful opportunity to present a complete defense," *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (internal quotation marks omitted); *accord Wade v. Mantello*, 333 F.3d 51, 57 (2d Cir. 2003), the "'power of courts to exclude evidence through the application of evidentiary rules that serve the interests of fairness and reliability is well-settled.'" *Zarvela v. Artuz*, 364 F.3d 415, 418 (2d Cir. 2004) (quoting *Wade*, 333 F.3d at 58); *see also, e.g.*, *Holmes v. South Carolina*, 547 U.S. 319,

13

327 (2006) ("While the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury."); *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) ("Few rights are more fundamental than the right of the accused to present witnesses in his own defense. In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." (citations omitted)).

In determining whether an evidentiary ruling so interfered with a state habeas petitioner's defense as to constitute a denial of due process, I must first examine whether the ruling was correct under state law. *See Wade*, 333 F.3d at 59 (noting that inquiry into materiality of evidence "may be premature if the trial court's ruling was proper"). Even where evidence was erroneously excluded, habeas relief is warranted only if the omission deprived the petitioner of a fundamentally fair trial, *Estelle v. McGuire*, 502 U.S. 62, 72 (1991), which occurs if the excluded evidence would have created "'a reasonable doubt that did not otherwise exist,'" *Justice v. Hoke*, 90 F.3d 43, 47 (2d Cir. 1996) (quoting *United States v. Agurs*, 427 U.S. 97, 112 (1976)). And of course even if an improper evidentiary ruling deprived a defendant of due process of law, AEDPA would prevent me from granting relief for that constitutional violation unless the Appellate Division's opinion upholding the ruling was unreasonable.

Here the trial court did exclude evidence of some probative value. Jaffery testified that he had a knife up his sleeve at the time of the encounter at Papaya King, but never

took it out. Tr. 273, 286-87. Ojar claimed that he found a folding knife on the floor and picked it up in order to prevent anyone from using it against him. Tr. 755-57. The prosecution argued that Ojar had brought the knife that he used to stab Fanelli. If Ojar had been allowed to elicit a description of Jaffery's knife and it matched his own testimony of the knife that he claimed to have found, this similarity would have lent some support to Ojar's claim that he found and picked up the knife instead of bringing it himself. Whether or not he brought the knife himself had a bearing on the intent elements of his charges on assault and criminal possession of a weapon (as well as the charge of attempted murder, of which he was acquitted). The trial court, in preventing Ojar from eliciting a description of the knife, stated that on Ojar's theory of the facts (that he picked up a knife), the ownership of the knife did not matter. This is true, but misses Ojar's point. If Ojar found the knife, then its ownership would be immaterial, but eliciting a description of the knife would shed light on whether or not Ojar did in fact find the knife.

However, in light of the broad discretion afforded trial courts in making evidentiary rulings on relevance and probative value, *see People v. Messa*, 749 N.Y.S.2d 885, 885 (2d Dep't 2002) ("The trial court has broad discretion to limit cross-examination when questions are repetitive, irrelevant, or only marginally relevant, concern collateral issues, or threaten to mislead the jury."), I cannot say that it was error for the trial court to conclude that the probative value of the testimony identifying the knife was outweighed by the risk of confusion of the issues or prejudice caused by highlighting Jaffery's later misconduct. *See People v. Primo*, 96 N.Y.2d 351, 355 (2001) ("A court may, in its discretion, exclude relevant evidence if its probative value is outweighed by the prospect of trial delay, undue prejudice to

the opposing party, confusing the issues or misleading the jury." (citations omitted)). And I certainly cannot say that the Appellate Division, in affirming the exclusion of this evidence, unreasonably applied *Crane*, *Holmes*, *Chambers*, or the Supreme Court's other holdings on the power of trial courts to exclude evidence. *See, e.g.*, *Jones v. Stinson*, 229 F.3d 112, 120-21 (2d Cir. 2000) (affirming judgment even though evidence was erroneously excluded because Appellate Division's affirmance of conviction was not unreasonable).

     3. *Prosecutorial Misconduct*

     The Appellate Division found Ojar's claim of prosecutorial misconduct to be unpreserved for appellate review, but gave no indication as to why. *Ojar I*, 832 N.Y.S.2d at 252 ("The defendant's contention . . . , regarding alleged prosecutorial misconduct, is unpreserved for appellate review and, in any event, is without merit."); *see also Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810 n.4 (2d Cir. 2000) ("[W]here a state court says that a claim is 'not preserved for appellate review' and then rules 'in any event' on the merits, such a claim is not preserved."). Indeed, no procedural bar is apparent here. The record reflects that Ojar moved for a mistrial based on the exact conduct complained of here and in the Appellate Division. Tr. 823-27. Although Ojar did not use the words "prosecutorial misconduct" or "due process," he clearly indicated the behavior he objected to and the relief requested. *Id.* Ojar's theory regarding to why he was entitled to relief -- that the prosecutor's persistence in asking improper questions was a willful attempt to introduce forbidden material to the jury, which succeeded in introducing enough to prejudice him -- was articulated to the trial judge in essentially the same terms as it was on appeal. *Compare id.* at 825-27 *with* Appellant's Br. 47-48, Appellant's Reply Br. 11. The parties in their briefs to the Appellate Division addressed the merits with no suggestion that

the issue was not preserved for review.  In short, Ojar appeared to comply with New York's

liberal contemporaneous objection rule.[5]

There is no argument that Ojar had cause and prejudice for his procedural default,

and he has not made a substantial showing of actual innocence.  However, the procedural bar

applied to deem his claim unpreserved was plainly inadequate.  To determine the adequacy of

this procedural bar, I look to *Cotto*'s three "guideposts."  331 F.3d at 240.  First, I ask "whether

the alleged procedural violation was actually relied on in the trial court, and whether perfect

compliance with the state rule would have changed the trial court's decision." *Id.*  Here, the trial

court did not rely on any error made by Ojar, because there was none.  This factor favors Ojar.

Second, I ask "whether state caselaw indicated that compliance with the rule was demanded in

the specific circumstances presented." *Id.*  It is difficult to state with certainty due to the limited

factual recitations contained in typical Appellate Division opinions, but I have not found cases

suggesting that a request for relief based on prosecutorial misconduct is insufficient if it does not

contain the words "prosecutorial misconduct" or "due process" but otherwise specifies the

grounds and the reason for requesting the desired relief.  The cases I have examined suggest that

---

[5]       The provision reads as follows:

> For purposes of appeal, a question of law with respect to a ruling or instruction
> of a criminal court during a trial or proceeding is presented when a protest
> thereto was registered, by the party claiming error, at the time of such ruling or
> instruction or at any subsequent time when the court had an opportunity of
> effectively changing the same.  Such protest need not be in the form of an
> "exception" but *is sufficient if the party made his position with respect to the
> ruling or instruction known to the court*, or if in reponse [sic] to a protest by a
> party, the court expressly decided the question raised on appeal.  In addition, a
> party who without success has *either expressly or impliedly* sought or requested
> a particular ruling or instruction, is deemed to have thereby protested the court's
> ultimate disposition of the matter or failure to rule or instruct accordingly
> sufficiently to raise a question of law with respect to such disposition or failure
> regardless of whether any actual protest thereto was registered.

N.Y. Crim. Proc. Law § 470.05(2) (emphasis added).

a motion for a mistrial would be sufficient. *See, e.g.*, *People v. Liverpool*, 554 N.Y.S.2d 326, 328 (2d Dep't 1990) ("In those instances in which objections [to the prosecutor's summation] were interposed and sustained, no further relief or curative instructions were requested, nor was a motion for a mistrial made, so that the court must be deemed to have corrected the errors to the defendant's satisfaction and any further claims of error are unpreserved."); *People v. Merchant*, 541 N.Y.S.2d 599, 599 (2d Dep't 1989) (similar). The second factor thus favors Ojar. Finally, I must ask "whether [Ojar] 'substantially complied' with the rule given 'the realities of trial,' and, therefore, whether demanding perfect compliance would serve a legitimate governmental interest." *Cotto*, 331 F.3d at 240. This must be answered in the affirmative as well, as Ojar made a specific objection towards the prosecutor's conduct, explained why that conduct prejudiced him, and requested a mistrial. Stating the words "prosecutorial misconduct" and "due process" would not have appreciably aided the trial court in assessing the nature or merits of his claim. Accordingly, this procedural bar is inadequate to sustain the state court's judgment. *See Brown v. Sec'y for Dep't of Corr.*, 200 F. App'x 885, 888-89 (11th Cir. 2006) (finding a state court's incorrect application of state procedural default law inadequate to prevent review of the merits of a § 2254 petition); *Clarke v. Goord*, No. 07-CV-366 (BMC), 2007 WL 2324965, at *2 (E.D.N.Y. Aug. 10, 2007) (similar).

It appears that AEDPA's limited scope of review does not apply to the Appellate Division's rejection of Ojar's claim despite the Appellate Division's alternative determination that the claim was meritless. In *Jimenez v. Walker*, the Second Circuit held that a claim disposed of by a state court was necessarily decided either on procedural grounds or on the merits, and seemed to suggest that such a claim could not be both decided on procedural grounds and on the

18

merits. 458 F.3d 130, 145-46 & n.18 (2d Cir. 2006). The Circuit in *Jimenez* instructed federal

courts to examine "(1) the face of the state-court opinion, (2) whether the state court was aware

of a procedural bar, and (3) the practice of state courts in similar circumstances," *id.* at 145 n.16,

in order "to classify the decision as either":

> (1) fairly appearing to rest primarily on federal law or to be
>     interwoven with federal law or
> (2) fairly appearing to rest primarily on state procedural law.
>
> . . . The *Harris* presumption [that the decision was
> on the merits for AEDPA purposes] does not apply to decisions in
> the second category, which show themselves to rest on an
> independent state procedural bar. *Nor does it apply to decisions in
> the first category which contain a clear statement of reliance on a
> state procedural bar. No AEDPA deference is due to these
> decisions*, but the state may successfully assert that habeas relief is
> foreclosed provided that the independent state procedural bar is
> adequate to support the judgment and that neither cause and
> prejudice nor a fundamental miscarriage of justice is shown.

*Id.* at 145 (emphasis added). That is, if a claim fairly appears to "rest primarily on federal law or

to be interwoven with federal law," it is still not subject to AEDPA's limited scope of review if it

contains "a clear statement of reliance on a state procedural bar." *Id.* The Appellate Division's

denial of Ojar's due process claim of prosecutorial misconduct as "unpreserved and, in any

event, . . . without merit" does appear to be based on or at least interwoven with federal law, but

contains a clear statement of reliance on a state procedural bar. *Ojar I*, 832 N.Y.S.2d at 252.

Therefore, *Jimenez* indicates that AEDPA's limited scope of merits review does not apply here.

It should be noted that there is some reason to doubt the applicability of *Jimenez*'s

rule here. Initially, *Jimenez*'s command that no AEDPA deference be accorded decisions

interwoven with federal law but containing a clear statement of reliance on a procedural bar is

technically dictum, as the decision it was reviewing did not contain a clear statement of reliance

19

on a procedural bar.  *See Jimenez*, 458 F.3d at 135 ("The Appellate Division affirmed Jimenez's conviction, summarily dismissing his challenge to the heroin-evidence exclusion as one of several contentions that were 'either unpreserved for appellate review or without merit.'").  Further, this dictum -- that a state court decision clearly relying on a procedural bar but also deciding the merits is due no deference if the procedural bar fails -- is in some tension with the Supreme Court's observation that "a state court need not fear reaching the merits of a federal claim in an alternative holding" if it also employs a procedural bar.  *Harris*, 489 U.S. at 264 n.10 (emphasis omitted); *accord Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996).  One might wonder why a state court should fear to employ an inadequate procedural bar in an alternative holding any more than it should fear to make an unreasonable determination of the merits in an alternative holding.  The principle might appear to be that state courts should not forfeit the strongest ground for sustaining their decision merely because they mistakenly make a weaker claim in the alternative, in which case *Jimenez*'s dictum would be puzzling.

   However, *Harris*'s observation does not enact a general principle of solicitude towards state court decisions.  The reason *Harris* indicated that a state court should not fear to reach the merits of a federal claim in the alternative was not that state court judgments should always receive the most favorable treatment possible; it was that a properly-invoked state procedural bar constitutes an independent and adequate ground for the court's decision whether or not the state reaches the merits of federal claims.  489 U.S. at 264 n.10; *see also, e.g.*, *Cotto*, 331 F.3d at 217 (noting the prudential status of the independent and adequate state grounds doctrine as applied to § 2254 petitions).  The question whether misplaced reliance on a state procedural bar negates AEDPA's limitations on the scope of review of an alternative ruling on

20

the merits is not a question about the prudential independent and adequate state grounds doctrine, but an exercise in interpreting AEDPA's provisions limiting federal review of merits decisions. *Jimenez* apparently concluded that a claim is not "adjudicated on the merits" within the meaning of § 2254(d) if the state court invokes a procedural bar in addition to discussing the merits. The rationale for this conclusion might be reliance on a procedural bar by definition renders hypothetical any subsequent statements regarding the merits.

In any event, *Jimenez*'s dictum expressly contemplates this precise situation -- a state court decision based on or interwoven with the merits of federal law which *also* contains a clear statement of reliance on a state procedural bar -- and I will not second-guess the Circuit's conclusion that "[n]o AEDPA deference is due" to such a decision if the procedural bar is inadequate. 458 F.3d at 145; *see also, e.g.*, *Patsy's Italian Restaurant, Inc. v. Banas*, 508 F. Supp. 2d 194, 209 (E.D.N.Y. 2007) ("[A]s a general principle, a federal district court is required to give great weight to the pronouncements of its Court of Appeals, even though those pronouncements appear by way of *dictum*." ).[6]  In any event, as I find that the Appellate

---

[6]     I am not persuaded by the contrary analysis set forth in *Clarke*, 2007 WL 2324965, at *3.  The district court in *Clarke* considered a state court's invocation of a procedural bar and further observation "'there does not, moreover, appear to have been any violation of the defendant's right to counsel in this case.'"  *Id.*  The court in *Clarke* noted that under *Jimenez* a claim is adjudicated on the merits if the claim "'fairly appear[s] to rest primarily on federal law or to be interwoven with federal law' *and* does not rest on 'a clear and express statement of reliance on a state procedural bar,'" *id.* (emphasis added), and went on to acknowledge that the state court *did* in fact expressly rely on a state procedural bar, *id.*  Nevertheless, the district court stated, "[b]ecause the [state] court found the claim both barred and meritless, and because I find the procedural bar inadequate, I hold that the state court determined the claim on the merits."  *Id.*  This is contrary to *Jimenez*'s dictum that "[n]o AEDPA deference is due" to decisions on the merits if they also contain a clear statement of reliance on a procedural bar.  *Jimenez*, 458 F.3d at 145.  The *Clarke* court may have assumed that *Jimenez* only referred to a clear statement of reliance on an *adequate* procedural bar, but an examination of *Jimenez*'s dictum indicates that the Second Circuit contemplated *de novo* review of such decisions in the event that the procedural bar was not raised, was inadequate, or was overcome by a showing of cause and prejudice or a fundamental miscarriage of justice.  *See Jimenez*, 458 F.3d at 145 ("No AEDPA deference is due to these decisions [*i.e.*, those based on or interwoven with federal law but including a clear statement of reliance on a state procedural bar], but the state may successfully assert that habeas relief is foreclosed *provided* that the independent state procedural bar *is adequate to support the judgment* and that neither cause and prejudice nor a fundamental miscarriage of justice is shown."  (emphasis added)).

21

Division's decision on the merits was correct, my conclusion would be the same if AEDPA's limited scope of review applied.

Reaching the merits, I find that Ojar was not deprived of due process of law by the prosecutor's attempts to introduce hearsay and to comment on his post-arrest silence. Comments allegedly constituting prosecutorial misconduct do not implicate the federal constitution unless they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642-43 (1974)). Such comments are not grounds to vacate a conviction unless they have caused actual prejudice; that is, if they "had a substantial and injurious effect or influence in determining the jury's verdict." *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994). To determine if the prosecutor's behavior had such effect, I must examine (1) "the severity of the misconduct," (2) "the measures adopted to cure the misconduct," and (3) "the certainty of conviction absent the misconduct." *United States v. Elias*, 285 F.3d 183, 190 (2d Cir. 2002).

The prosecutor's repeated attempts to introduce hearsay evidence regarding identification, though unwarranted, were not particularly severe misconduct considering that identity was a collateral issue in the case due to Ojar's admission that Fanelli was impaled by a knife he was holding. Even to the limited extent that the questions were prejudicial, every objection to them was promptly sustained and in the one instance when an objectionable answer was given, it was stricken. Tr. 525-33. The prosecutor's comment on Ojar's post-arrest silence was entirely and apparently deliberately improper, especially given that it came immediately on the heels of a sidebar conference where the trial judge preemptively warned the prosecutor not to

inquire into that subject.  Tr. 821-22.  However, it was only a single comment, and the court

immediately gave pointed curative instructions to the jury, dissipating the potential prejudice

significantly.  Tr. 822-23; *see also United States v. Colombo*, 909 F.2d 711, 715 (2d Cir. 1990)

(noting presumption that "a jury adheres to the curative instructions of a trial court" unless the

evidence is "devastating" and there is an "overwhelming probability that the jury will be unable

to follow the court's instructions" (internal quotation marks omitted)).[7]  Therefore, I find that

Ojar did not suffer actual prejudice amounting to a denial of due process as a result of the

prosecutor's questions, considering that they were in each case promptly addressed.

4.      *Reference to Gang Ties*

At oral argument of this petition, Ojar complained for the first time about the

prosecution's suggestion that Ojar was a gang member.  Though the government's belated

application, out of the presence of the jury, to introduce evidence of Ojar's past gang activity was

denied, Tr. 425-27, the government did question two defense witnesses about whether or not

they were members of a gang called the Zulu Nation, Tr. 642-45, 701-02, and suggested at

summation based on one of the witnesses' equivocal response to this question that Ojar was a

member of the Zulu Nation, Tr. 1009, 1022, 1026-27.

Ojar did not raise this contention on appeal or in his written submission in

connection with this petition.  As this claim could have been raised on appeal and was not, it

cannot now be raised in state collateral attack.  N.Y. Crim. Proc. Law § 440.10(2)(c).  As his

claim is unexhausted and now cannot be exhausted, it is deemed procedurally defaulted.  *See*

---

[7]      The respondent also suggests that the fact that the jury acquitted Ojar of attempted murder
suggests that it was not "so inflamed by the prosecutor's questions that it was moved to convict him without regard
to the quality of the evidence against him."  Resp.'s Mem. Opp. Pet. 39-40.  I do not find that significant in this case,
however, as the prejudice complained of here was not inflammation of emotions but rather drawing unreliable
inferences and burdening the constitutional right to silence.

*Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2000) ("[W]hen 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present these claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' federal habeas courts must also deem the claims procedurally defaulted." (quoting *Coleman*, 501 U.S. at 735 n.1)). As Ojar cannot show cause and prejudice, a fundamental miscarriage of justice, or the inadequacy of the state rule preventing him from exhausting his claims, I may not consider this claim now.

CONCLUSION

For the reasons stated above, the petition is denied. As Ojar has failed to make a substantial showing that he was denied a constitutional right, no certificate of appealability shall issue.


So ordered.



John Gleeson, U.S.D.J.

Dated: February 15, 2008
        Brooklyn, New York